UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROGER MONTENEGRO TORREZ, et al., | |
| | No. 13 C 825 |
| Plaintiffs, | |
| | Judge Thomas M. Durkin |
| v. | |
| JEPPESEN SANDERSON, INC. and THE BOEING COMPANY, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Nine citizens of Bolivia who represent the estates of seven people who died in a plane crash in Trinidad, Bolivia, filed a complaint in the Circuit Court of Cook County, Illinois, alleging that seven defendants committed negligent acts that caused the plane crash. R. 1-1. Defendants removed the case to this Court. R. 1. In the time since the case was removed, the Court dismissed several of the defendants, leaving Jeppesen Sanderson, Inc. and The Boeing Company as the remaining two defendants. R. 62. Plaintiffs seek to have the case remanded to state court under 28 U.S.C. § 1441(b)(2), arguing that both Boeing and Jeppesen have their principal place of business in Illinois. R. 35. Plaintiffs also seek attorneys' fees pursuant to 28 U.S.C. § 1447(c). *Id.* For the reasons stated below, Plaintiffs' motion to remand is granted, while their motion for fees is denied.

## Background

Plaintiffs allege that Jeppesen "produced and sold certain charts for instrument approaches to the airport at Trinidad, Bolivia," and that defects in the charts caused the plane to crash. R. 1-1 at 25-30.

Plaintiffs allege that Boeing is liable for any defects in the charts at issue because "Boeing specifically supervised and directed defendant Jeppesen . . . in [its] preparation of the approach charts." *Id.* at 32. Jeppesen is a Boeing subsidiary, and Plaintiffs allege that Boeing "treated" Jeppesen "like [an] operating division[], not as [an] independent, stand-alone compan[y]." *Id.* at 31. According to Plaintiffs, Boeing "developed a business and budgetary strategy" and "required" Jeppesen to follow it, and Boeing "directly participated in" Jeppesen's business and "overrul[ed]" Jeppesen's decisions. *Id.*

In the notice of removal, Boeing argues that it was fraudulently joined to the case because it is not directly responsible for any of the allegedly negligent actions specifically, and it is not responsible for Jeppesen's actions generally. R. 1 at 9-11. Boeing argues that Plaintiffs sued Boeing in order to keep the case in Illinois state court pursuant to 28 U.S.C. § 1441(b)(2) (known as the forum defendant rule), which prohibits removal if a "properly joined" defendant is a "citizen of the State in which such action is brought."

For its part, Jeppesen alleges that its principal place of business is in Colorado. R. 1 at 4. Thus, Jeppesen argues that remand would not be appropriate

pursuant to the forum defendant rule if Plaintiffs' claims against Boeing are dismissed and Jeppesen is the only remaining defendant. *Id.* at 5.

Plaintiffs argue that remand is appropriate pursuant to the forum defendant rule because their allegations against Boeing are sufficient to show that Boeing was properly joined, and Boeing's principal place of business is in Illinois. R. 36 at 7-10. Plaintiffs argue, moreover, that even if Boeing was fraudulently joined, the forum defendant rule still requires remand because Jeppesen filed a document with the Colorado Secretary of State stating that Jeppesen's "principal office" is in Chicago. R. 36-3 at 2.

## Legal Standard

A plaintiff may not sue a non-diverse "defendant solely for the purpose of defeating federal diversity jurisdiction." *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999) (citing *Gottlieb v. Westin Hotel*, 990 F.2d 323, 327 (7th Cir. 1993)). "Such joinder is considered fraudulent, and is therefore disregarded, if the [diverse] defendant can show there exists no 'reasonable possibility that a state court would rule against the [non-diverse] defendant.'" *Schwartz*, 174 F.3d at 878 (quoting *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)); *see also Morris v. Nuzzo*, 718 F.3d 660, 671 n.5 (7th Cir. 2013) ("We stick exclusively to our own 'any reasonable possibility' test in this opinion . . . ."). A defendant "bear[s] a heavy burden to establish fraudulent joinder," and courts must "resolv[e] all issues of fact and law in favor of the plaintiff." *Poulos*, 959 F.2d at 73. The Seventh Circuit has suggested that this "burden is even more favorable to the

3

plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009).

All courts agree that the fraudulent joinder doctrine applies to protect a defendant's right of removal when a plaintiff fraudulently joins a *non-diverse* defendant in order to defeat federal diversity jurisdiction. District courts in this Circuit are divided, however, over whether the fraudulent joinder doctrine applies when a plaintiff has alleged a claim against a *diverse* defendant who is a resident of the forum state in order to invoke the forum defendant rule, as Plaintiffs have alleged here. *See Morris*, 718 F.3d at 666 (citing cases). Despite the "logical inconsistency" of limiting the doctrine's application to protection of the right of removal in circumstances where the plaintiff hopes to circumvent diversity jurisdiction, the Seventh Circuit recently declined to decide whether to extend the fraudulent joinder doctrine in circumstances where the defendant argues that the plaintiff "fraudulently" invoked the forum defendant rule. *Id.* at 670-71 ("Ultimately, we think it a very close question whether the fraudulent joinder doctrine ought to extend to diverse resident defendants, and we are reluctant to rule definitively on the issue today absent a more thorough and more able presentation of the relevant balance of interests described above. In any event, we are convinced that [the defendant] was not fraudulently joined."). But since, as is explained below, the Court finds that Boeing was not fraudulently joined, the Court does not have to

decide whether it is appropriate to apply the fraudulent joinder doctrine here in order to dismiss Plaintiffs' claims against Boeing. *See id.*

## Discussion

According to Boeing, since it is incorporated under Delaware law, that law governs whether Boeing can be liable for the actions of its subsidiaries, and, thus, whether Plaintiffs' allegations are sufficient to show that there is a reasonable possibility that Plaintiffs will succeed on their claims. R. 1 at 10. Without conceding what substantive law is applicable to their claims, Plaintiffs argue that under Delaware law a parent corporation can be liable for its subsidiary's actions, absent a veil-piercing or alter ego theory, "under general agency principles . . . when the subsidiary is acting on behalf of the parent and the cause of action arises out of that relationship." R. 36 at 7 (citing *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 198 (3d Cir. 2001)); R. 39 at 5. Plaintiffs also argue that under Illinois law Boeing can be directly liable for Jeppesen's conduct because it "specifically direct[ed]" Jeppesen's allegedly negligent conduct. R. 36 at 8 (citing *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274 (2007)).

Plaintiffs allege that "Boeing specifically supervised and directed defendant Jeppesen . . . in [its] preparation of the approach charts." R. 1-1 at 32. This allegation is sufficient to show that there is a reasonable possibility that Plaintiffs will succeed on their claims against Boeing. Under Delaware law, a parent can be liable for "specific" acts of its subsidiary without allegations of fraud (which would be necessary to state a claim that the parent is liable "generally" for its subsidiary's

conduct as its alter ego), if the parent exercised sufficient control over the specific act in question. *See Ross Holding and Mgmt. Co. v. Advance Realty Group, LLC*, 2010 WL 1838608, at *13 (Del. Ch. Apr. 28, 2010); *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463-64 (D. Del. 1991). Plaintiffs allege that Boeing controlled Jeppesen's preparation of the charts, and that this preparation was negligent. Thus, Plaintiffs have stated allegations sufficient to show that there is a reasonable possibility they will succeed on their claims against Boeing.

Boeing cites *Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir. 1992), and several cases from other circuits, which found that plaintiffs had fraudulently joined parent defendants by alleging that the parents were liable for their subsidiaries' actions. R. 1 at 9-10; R. 38 at 9. These cases, however, either found that the plaintiffs had failed to meet the higher standard of veil piercing or alter ego theories, or applied theories of agency that required allegations that rose to the level of veil piercing. *See Poulos*, 959 F.2d at 74 ("Although Poulos alleged that RHM controlled Naas, he alleged no impropriety or disregard of Naas' corporate form."). Thus, these cases do not support Boeing's contention that there is not a reasonable possibility that Plaintiffs will succeed on a claim that Boeing is liable for Jeppessen's conduct under an agency theory that does not require allegations of fraud.

Boeing argues that there is no reasonable possibility that Plaintiffs' claims will succeed because Plaintiffs cannot "prove that Boeing 'instigated' the 'precise conduct' at issue—Jeppessen Sanderson's production and sale of the aeronautical

charts at issue." R. 38 at 9. But Plaintiffs have specifically alleged that Boeing "directed" Jeppessen's "preparation" of the charts. R. 1-1 at 32. Only semantics separates what Boeing contends Plaintiffs needed to allege from what Plaintiffs actually did allege. Therefore, there is a reasonable possibility that Plaintiffs will succeed on their claims against Boeing, and Plaintiffs did not fraudulently join Boeing.[1]

Boeing also submits a declaration by a Jeppessen employee with the title of "Project Manager, Aviation – IFR Charting," as evidence that Boeing does not control Jeppessen. R. 38-2 ¶ 2. In opposition, Plaintiffs rely on affidavits by several former Jeppessen employees filed in another case against Jeppessen in this District. R. 36 at 9-10 (citing *Haskins v. Midwest Air Traffic Control Serv.*, 12 C 4584 (Norgle, J.), R. 28-2 Exs. 8-11). It may be permissible in certain circumstances for a court to consider evidence outside the pleadings that clearly establishes facts relevant to determining whether a defendant has been fraudulently joined. *See, e.g., Rutherford v. Merck & Co., Inc.*, 428 F. Supp. 2d 842, 847-48 (S.D. Ill. 2006); *Hernandez v. Home Depot, U.S.A., Inc.*, 2006 WL 1647438, at *2 (N.D. Ill. June 5, 2006); *Gen. Elec. Railcar Servs. Corp. v. Nat'l Steel Car Ltd.*, 2004 WL 2392104, at *2 (N.D. Ill. Oct. 25, 2004); *CC Indus., Inc. v. ING/Reliastar Life Ins. Co.*, 266 F. Supp. 2d 813, 815-16 (N.D. Ill. 2003). It would be illogical, however, for the Court to consider evidence on a motion to remand in the same manner as it would on a

---

[1] Since the Court has held that Boeing will remain as a defendant making remand appropriate under 28 U.S.C. § 1441(b)(2), it is unnecessary for the Court to decide whether Jeppessen is a domiciliary of Illinois.

7

motion to dismiss under Rule 12(b)(6) or a motion for summary judgment under Rule 56. *See CC Indus.*, 266 F. Supp. 2d at 816 ("evidence [outside the pleadings] [should not be] used to pre-try the case"). The purpose of the fraudulent joinder doctrine and a motion to remand is to place the case in the proper forum, not to rule substantively on Plaintiffs' claims. The declaration and affidavits cited by the parties do not clearly demonstrate whether Plaintiffs will be successful on their claim against Boeing. If anything, these documents show that there is a genuine dispute about material facts that should preclude Boeing's dismissal from this case.

Lastly, Plaintiffs seek attorneys' fees under 28 U.S.C. § 1447(c), which provides that an "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." An order requiring payment of costs and attorneys' fees is within the Court's discretion. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005). A court should exercise its discretion to grant attorneys' fees only "'if, at the time the defendant filed his notice [of removal] in federal court, clearly established law demonstrated that he had no basis for removal. . . . By contrast, if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees.'" *Wolf v. Kennelly*, 574 F.3d 406, 412 (7th Cir. 2009) (quoting *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007)).

Here, no clearly established law foreclosed Boeing's argument that it cannot be liable for Jeppesen's conduct. This case is not like *TCF National Bank v. W & A Building, LLC*, 2010 WL 4791454 (N.D. Ill. Nov. 17, 2010), in which the court

remanded the case under the forum defendant rule and awarded attorneys' fees to the plaintiff. In that case, it was unreasonable for the defendant limited liability company to seek removal based on the location of its principal place of business in light of clearly established law that a limited liability company is a domiciliary of every state in which any of its members are domiciled. *Id.* at *3. By contrast, it was not unreasonable for Boeing to challenge Plaintiffs' allegations that Boeing should be liable for its subsidiary's actions, when such liability is an exception to the general rule that parent corporations are not so liable. Congress did not mean "to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases." *Martin*, 546 U.S. at 139. Thus, the Court finds that it is not appropriate to grant Plaintiffs' motion for attorneys' fees because clearly established law did not foreclose Boeing's argument for removal, and it was not obvious that Boeing's attempt to remove would result in remand.

## Conclusion

For the reasons stated above, Plaintiffs' motion, R. 35, is granted in so far as this case is remanded to Illinois state court, and denied in that the Court will not award attorneys' fees to Plaintiffs. The status hearing previously scheduled for September 24, 2013 is canceled.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: September 18, 2013